Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE BAYAMÓN
PANEL XI

| | | |
|---|---|---|
| VÍCTOR MIRANDA SANTANA<br><br>Recurrente<br><br><br>V.<br><br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202200666 | *Revisión de Decisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>B-1359-22<br>B-1034-22<br>B-1360-22<br>B-1275-22<br>B-1134-22<br>B-1362-22<br>B-1358-22<br><br>Sobre:<br>Entrega de Alimentos y Meriendas |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

*Lebrón Nieves. Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 31 de marzo de 2023.

El 16 de diciembre de 2022, compareció ante este Tribunal de Apelaciones el señor Víctor Miranda Santiago, miembro de la población correccional (en adelante, parte recurrente o señor Miranda Santiago), mediante escrito de revisión administrativa intitulado *Demanda.* Por medio de este, nos solicita que revisemos varias decisiones administrativas emitidas el 14 de septiembre de 2022[1], el 26 de octubre de 2022[2], el 16 de noviembre de 2022[3], y el 23 de noviembre de 2022[4] emitidas por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación

---

[1] *Respuesta al Miembro de la Población Correccional* B-1034-22.
[2] *Respuesta al Miembro de la Población Correccional* B-1134-22.
[3] *Respuesta al Miembro de la Población Correccional* B-1275-22.
[4] *Respuesta al Miembro de la Población Correccional* B-1358-22 y *Respuesta al Miembro de la Población Correccional* B-1362-22.

Número Identificador

SEN2023 _____

(en adelante, parte recurrida o División de Remedios Administrativos).

Por los fundamentos que adelante se esbozan se confirma la determinación recurrida.

**I**

Conforme surge del expediente, el señor Miranda Santana se encuentra recluido en la institución carcelaria Bayamón 501, módulo 1D. El 1ro de septiembre de 2022, la parte peticionaria presentó la *Solicitud de Remedio Administrativo*. En esta, arguyó que los alimentos que le proveía la institución llegaban fríos y que como consecuencia, no podía ingerirlos. Añadió que, como merienda le daban una caja de cereal y que esta no era apropiada. El 14 de septiembre de 2022, la División de Remedios Administrativos emitió la *Respuesta al Miembro de la Población Correccional* con número de referencia B-1034-22. Mediante la misma, desestimó la solicitud de la parte recurrente por falta de información.

Posteriormente, el 6 de octubre de 2022, la parte peticionaria presentó otra *Solicitud de Remedio Administrativo* con los mismos argumentos presentados en la primera solicitud. El 16 de noviembre de 2022, la parte recurrida emitió la *Respuesta al Miembro de la Población Correccional* con número de referencia B-1275-22. En esta indicó que, el 6 de octubre de 2022 hubo un cambio de menú debido al paso del huracán Fiona.

Asimismo, el 31 de octubre de 2022, el señor Miranda Santana presentó la *Solicitud de Remedio Administrativo* donde arguyó que no se le estaban proveyendo alimentos conforme a su "dieta". Por otro lado, el 1ro de noviembre de 2022, nuevamente presentó una *Solicitud de Remedio Administrativo*. En la anterior solicitud, acotó que, los alimentos que se le suministraban en la institución se encontraban fríos y que no le estaban proveyendo unas meriendas que habían sido solicitadas por este.

Así las cosas, el 16 de noviembre de 2022, la parte peticionaria presentó una *Solicitud de Remedio Administrativo*, en la que reiteró que recibía los alimentos fríos, y que no le estaban proveyendo jugos ni pan integral. Añadió que, tal solicitud era un "último aviso" que si no se cumplía su petición iba a presentar un recurso ante un tribunal y a demandar al proveedor de alimentos. El 23 de noviembre de 2022, la aludida solicitud fue desestimada por la parte recurrida por medio de *Respuesta al Miembro de la Población Correccional* con número de referencia B-1358-22, bajo el argumento de que los miembros de la población correccional tenían la responsabilidad de presentar las solicitudes de remedios de buena fe conforme a su mejor conocimiento y que debían utilizar un lenguaje adecuado.

El 21 de noviembre de 2022, el señor Miranda Santana volvió a presentar otra *Solicitud de Remedio Administrativo* donde esbozó los mismos argumentos que en las solicitudes anteriores. El 23 de noviembre de 2022, mediante la *Respuesta al Miembro de la Población Correccional* con número de referencia B-1362-22, la parte recurrida desestimó tal solicitud por ser repetitiva.

El 16 de diciembre de 2022, la parte recurrente acudió ante este foro revisor mediante recurso de revisión de decisión administrativa intitulado *Demanda*. En este, aunque la parte recurrente no esboza ningún señalamiento de error, arguye que, había agotado todo tipo de remedios administrativos respecto a los alimentos y dietas. Sostiene que, la parte recurrida incumplió con el debido proceso de ley y que no procedía que esta última desestimara las solicitudes de remedio presentadas por el señor Miranda Santana. Nos solicita, además, que ordenemos la asignación de un monitor federal con el propósito de que este supervise las dietas, la temperatura y condición de los alimentos que provee la parte recurrida. Finalmente, arguye que ha sufrido daños

mentales y emocionales por las acciones de la parte recurrida, y expresa que mediante el escrito pretende demandar a una compañía que llama "Carolina Keitering" por un total de doscientos cincuenta mil dólares ($250,000).

El 14 de febrero de 2023, la parte recurrida presentó la *Solicitud de Término Adicional*. El 15 de febrero de 2023, mediante *Resolución* le concedimos a la parte recurrida hasta el lunes 6 de marzo de 2023, para presentar su alegato en oposición.

El 1 de marzo de 2023, nuevamente la parte recurrida solicitó un término adicional mediante *Solicitud de Término Final*. Mediante *Resolución* emitida el 6 de marzo de 2023, le concedimos a la parte recurrida el término final e improrrogable hasta el lunes 13 de marzo de 2023.

El 10 de marzo de 2023 compareció la parte recurrida mediante *Escrito en Cumplimiento de Resolución y Solicitud de Desestimación*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A. *Revisión Determinaciones Administrativas***

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *OEG v. Martínez Giraud*, 2022 TSPR 93, 210 DPR ___ (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26,35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). Es por ello,

que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*; *OEG v. Martínez Giraud*, supra; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis suplido).[5]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y*

---

[5] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

*otros*, supra, pág. 819-820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *OEG v. Martínez Giraud*, supra*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otros,* supra, pág. 819-820. Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía,* supra,

págs. 36-37; *Torres Rivera v. Policía de PR*, supra, pág. 627. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud*, supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.*

### B. Reglamento Núm. 8583

Conforme a las disposiciones contenidas en la LPAU y acorde con el Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, el cual establece las facultades del Departamento de Corrección y Rehabilitación, se creó el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583 de 3 de junio de 2015 (Reglamento Núm. 8583). Además, este fue promulgado al amparo de la ley federal conocida como *Civil Rights of Institutionalized Person Act*, con el fin de canalizar de forma efectiva los reclamos de la población correccional. *Pérez López v. Depto. Corrección*, supra, pág. 670.

El objetivo principal del referido esquema legal es que, toda persona recluida en una institución correccional disponga de un organismo administrativo, en primera instancia, ante el cual pueda

presentar una solicitud de remedio, con el fin de minimizar las diferencias entre los miembros de la población correccional y el personal del Departamento de Corrección y Rehabilitación. Asimismo, este tiene como objetivo el evitar y reducir la presentación de pleitos en los tribunales de instancia. Véase, Introducción del Reglamento Núm. 8583, *supra*; *Pérez López v. Depto. Corrección*, supra, pág. 670. En específico, la Regla VI del Reglamento Núm. 8583, dispone que la División de Remedios Administrativos, tendrá jurisdicción para atender toda solicitud de remedio presentada por los miembros de la población correccional, relacionada directa o indirectamente con actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional, entre otras. *Pérez López v. Depto. Corrección*, supra, pág. 670. La División de Remedios Administrativos cuenta con un procedimiento para atender las solicitudes de remedios instadas por la población correccional. En las Reglas XII-XV se establecen los estándares y procedimientos para la radicación y contestación de solicitudes de remedio. Reglamento Núm. 8583, *supra.*

Por otro lado, la Regla XIII, Sección 5, del Reglamento 8583, *supra,* dispone que el Evaluador tiene la facultad para desestimar las solicitudes de los miembros de la población correccional cuando se dan una serie de circunstancias, como haber radicado la solicitud de remedio más de una vez sobre el mismo asunto.

Finalmente, el Reglamento 8583, *supra*, dispone que, el Tribunal de Apelaciones podrá realizar la revisión judicial de las solicitudes de remedios administrativos instadas por los miembros de la población correccional. *Pérez López v. Depto. Corrección*, supra, pág. 671. En lo pertinente, dispone lo siguiente:

1. El miembro de la población correccional podrá solicitar revisión ante el Tribunal de Apelaciones, dentro del término de (30) días calendarios, contados

a partir de la fecha del archivo en autos de la copia de la Notificación de la Resolución de Reconsideración, emitida por el Coordinador de Remedios Administrativos o noventa (90) días a partir de la radicación de la Solicitud de Reconsideración acogida, si la Agencia no actúa conforme a la misma.

2. [...][6]

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla a los hechos.

**III**

Según reseñáramos, la parte recurrente acudió ante este foro con el fin de que revisemos varias decisiones administrativas emitidas por la División de Remedios Administrativos. En esencia, arguye que, la institución correccional en la que se encuentra recluido le está proveyendo los alimentos fríos y que ello le ha causado daños emocionales. Añade que, la parte recurrida desestimó sus reclamaciones de manera frívola.

Respecto a la controversia que nos ocupa, la parte recurrente no presentó evidencia suficiente que derrotara la presunción de legalidad y corrección[7] que suponen las determinaciones administrativas. Cónsono con lo anterior, la parte recurrente no nos colocó en posición de variar la decisión del ente administrativo.

Asimismo, es menester recordar que, el Tribunal Supremo ha reconocido que el Departamento de Corrección "merece deferencia en la adopción y puesta en vigor de sus reglamentos, pues es la entidad con la encomienda de preservar el orden en las instituciones carcelarias".[8]

Ante la ausencia de una actuación arbitraria, ilegal, irrazonable o que constituya un abuso de discreción por parte de la

---

[6] Regla XV del Reglamento Núm. 8583, *supra.*
[7] Véase *Graciani Rodríguez v. Garaje Isla Verde,* supra, pág. 127; *Torres Rivera v. Policía de PR,* supra, pág. 626.
[8] *Pérez López v. Depto. Corrección,* supra, pág. 674.

agencia administrativa, razonamos que resulta innecesario que intervengamos con su determinación.

Finalmente, la parte recurrente sostiene en su escrito que, mediante este pretende demandar por daños y perjuicios a la compañía que provee alimentos en la institución correccional. Nos compete aclararle al señor Miranda Santana que, este no es el foro con competencia para instar tal reclamación, así como tampoco lo es la agencia administrativa.

**IV**

Por los fundamentos que anteceden, se confirma la determinación recurrida.

Notifíquese a las partes, al Procurador General y al Secretario del Departamento de Corrección y Rehabilitación. El Administrador de Corrección deberá entregar copia de esta *Sentencia* al confinado, en cualquier institución donde este se encuentre.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones. El juez Adames Soto hace constar las siguientes expresiones explicando su conformidad:

> "El reclamo del recurrente no se reduce a que recibe "alimentos fríos" y esto le causa daños emocionales. Muy por el contrario, la queja principal del recurrente es que, vistos sus padecimientos médicos, diabetes e hipertensión, el Departamento de Corrección y Rehabilitación no le está proveyendo la alimentación adecuada. Ante el hecho de que la pérdida de la libertad de un confinado no supone la privación de alimentos que se ajusten a las condiciones médicas que presente, juzgo atinado el proceso iniciado por este ante dicha agencia pública para reclamarlos. No obstante, la sucesión de peticiones del recurrente muestra gran cercanía la una de la otra, a pesar de que, en la mayoría

de las respuestas el DCR se ha dado explicación sobre la atención que está dando al tema. Voto conforme porque, aunque el DCR no ha resuelto el asunto principal sobre la dieta del recurrente, aparenta haber reconocido el asunto y dirigirse a resolverlo. En cualquier caso, sepa el recurrente que, del DCR no asumir la responsabilidad que tiene, de proveerle la dieta adecuada, puede acudir nuevamente al proceso administrativo que podría desembocar en otra revisión por este foro intermedio. Es decir, que el juez que suscribe este voto particular se mantendrá atento a las incidencias del caso."

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones